## PATTERSON v. WILSON.
### No. 9468.

Court of Civil Appeals of Texas. Austin.

Nov. 29, 1944.

Murphy & Leslie and B. W. Smith, all of San Angelo, for appellant.

No appearance for appellee.

McCLENDON, Chief Justice.

This case involves the custody of an 8-year-old boy, J. W. Patterson. The father, Troy Patterson, and mother, Mary Martha Wilson, were divorced in 1940, the decree awarding custody to the mother. Both spouses remarried in 1942, the mother to a soldier named Wilson. August 20, 1943, the decree was modified so as to award custody to the father; and October 18, 1943, it was again modified by awarding custody to the mother from September 1 to June 15, and to the father from June 15 to September 1 of each year. The father appealed from this judgment and it was affirmed by this court. 177 S.W.2d 1004. The opinion gives a detailed history of the controversy up to the time of the decree of October 18, 1943. We refer to that opinion.

The appeal was upon supersedeas bond, and the child was not delivered to the mother by the father until the mandate of this court was filed in the trial court in May, 1944. This delivery was effected at the court house by appointment, through the sheriff, the father and stepmother as well as the mother being present. When the child was turned over to his mother, a distressing scene occurred. The child was very rebellious, cursed his mother, calling her vile names, and refusing to go home with her. Eventually he did so, and she took him back to the school he had been attending since the previous November. In a few days he ran away from his mother's home and went to his father's place of business. The mother sought him there, being accompanied by the truant officer. Another scene took place in which the child threatened to injure his mother with a bowie knife which he carried in his belt. The stepmother offered to take the knife from the child; but the father interposed, telling her to stay out of it, as it was none of her affair. She did eventually get the knife from him, and he was taken back to his mother's home. The mother then filed her petition in the instant proceeding, asking that the decree be again modified so as to award custody to her during the entire year. This petition was predicated upon the assertion that since the last preceding modification of the decree the father and stepmother had poisoned the child's mind against his mother, and taught him to hate her. The father filed an answer and cross action in which he sought exclusive custody, on the ground that the mother was an unsuitable person to have the child's custody. The court modified the decree to the extent of giving the mother custody from June 15 to September 1, 1944, otherwise leaving the decree intact. No findings or conclusions

were filed or requested; but we infer that this modification was predicated upon the conclusion by the trial judge that it was best to leave the custody with the mother during the summer of 1944, in order to give her the opportunity of winning back the affection of her child which apparently she had lost during the period of the father's and stepmother's custody from August, 1943, until May, 1944.

The appeal is by the father upon the sole ground that under the evidence the mother was an unsuitable person to have the child's custody and the court should have awarded the exclusive custody to him.

We have very carefully perused the entire record and statement of facts, and are unable to conclude that the trial court's judgment was other than in the best interest of the child. The evidence is undisputed regarding the boy's behavior and language toward his mother when he was first delivered to her custody at the court house, and later when he ran away to his father's shop. He had been in the exclusive custody of his father and stepmother for the preceding nine months; and the circumstantial evidence strongly supports the mother's allegations that this rebellious and disrespectful attitude toward her was induced by the father and stepmother. The only testimony of unworthiness of the mother came from the father's mother, and was without corroboration from any other source, interested or otherwise. No disinterested witness testified to any fact or circumstance which in any way warrants the conclusion that the trial court's decision was other than in the child's best interest. The trial judge had sat in each of the three previous hearings, was fully conversant with the previous history of the controversy, and was much more favorably situated to render the proper decision than are the members of this court, who did not see the witnesses nor hear their testimony. There is no reasonable basis upon which a reversal of the decree could be justified. In so far as concerns awarding the custody to the mother during the summer of 1944, all issues are now moot, since the time of such custody has expired.

The father has filed a motion for leave to file an affidavit in this court, alleging that the mother has circumvented his right to the custody during the summer of 1944 under the October, 1943, de-

cree, and his supersedeas of its modification in the instant appeal, by secreting herself and the child, so that neither can be found. Attached to this affidavit is a verified application to the trial court to have the mother committed for contempt, and required to deliver the boy to the father under the October, 1943, decree. There has been no hearing upon this application. What has happened since the decree here appealed from can furnish no basis for setting aside the decree, and the motion to file the affidavit and attached copies of the contempt proceeding is overruled.

The trial court's judgment is affirmed.

Affirmed.